# United States District Court

CENTRAL DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA

v.

PAUL KINCAID

(Name and Address of Defendant)

**FILED**
SEP 0 7 2006
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CRIMINAL COMPLAINT

CASE NUMBER 06- 3040

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **September 2004** in **Montgomery** county, in the **Central** District of **Illinois** defendant(s) did:

knowingly possess materials containing three or more images of child pornography, as that term is defined in 18 U.S.C. 2256(8), which had been produced using materials that had been mailed and shipped and transported in interstate and foreign commerce; and

knowingly used a person under the age of eighteen years, to engage in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2), for the purpose of producing visual depictions of such conduct, said visual depictions having been produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, including by computer.

in violation of Title **18** United States Code, Section(s) **2252A(a)(5)(B) and 2251(a)**

I further state that I am a(n) **Secret Service Special Agent** and that this complaint is based on the
*Official Title*
following facts:       See attached affidavit

Continued on the attached sheet and made a part hereof:   ☒ Yes    ☐ No

s/ Scott Anderson
Signature of Complainant

Sworn to before me and subscribed in my presence,

September 7, 2006 at : 11 a.m.                    at    Springfield, Illinois
Date                                                         City and State

Byron Cudmore
U.S. Magistrate Judge                            s/ Byron G. Cudmore

Name & Title of Judicial Officer                 Signature of Judicial Officer

# **AFFIDAVIT**

I, Scott Anderson, Special Agent, U.S. Secret Service, being duly sworn upon oath, depose and state as follows:

1. I am a Special Agent with the United States Secret Service and have been so employed since February, 2002.

2. As a part of my duties with the U.S. Secret Service, I have been assigned to investigate certain allegations regarding the manufacturing, distribution and possession of child pornography. One such investigation concerns Paul Kincaid. Many of the facts of this investigation have been relayed to me by other law enforcement officials, including officers of the Litchfield, IL Police Department.

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. 2251(a) and 2252A are located at the subject premises.

4. Based upon my own knowledge, experience and training in child exploitation and child pornography investigations, there are certain characteristics common to individuals involved in the production and collection of child pornography"

   a. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

   b. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs,

correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

c. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

d. Collectors of child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

5. On or about 08/08/06, B.J. Wilkinson, Chief of Police, Litchfield, Illinois (Wilkinson) advised he was contacted by a mental health professional in Litchfield who stated she had been meeting with a twenty four year old, white female who advised during an interview session that she had been involved with an older gentleman by the name of "Paul" or "the Preacher" who had paid her to have sex with another man while he watched. The health professional indicated that she decided to call the police after the patient indicated that the gentleman also stated he was interested in younger people and had numerous photo albums containing pictures of "kids". Wilkinson asked the health professional if the patient would meet with him and the patient agreed. At that time, Chief Wilkinson responded to Litchfield Family Practice to meet with the above stated individual.

6. Upon arrival at Litchfield Family Practice, Wilkinson met with the patient who is identified as cooperating witness #1 (W1). Upon questioning, cooperating witness #1 stated that her cousin, cooperating witness #2 (W2), inquired whether she would be interested in making a little money. W2 proceeded to tell her that he had a friend that took pictures of people having

sex for money. W1 stated that she was interested because she could earn money this way and advised that she skeptically agreed to go.

7. W1 advised that W2 arranged an appointment on 08/01/06, at approximately 5:30 PM. On the above stated date, W1 and W2 responded to the hair salon located in the brick building at the rear of the property located at 502 East Union Street, Litchfield, IL. Once they arrived, Paul (later identified as Paul Kincaid) (Kincaid) told them that he was interested in them having sex in front of him and advised that he would pay them each three hundred and fifty dollars ($350.00) for this act. W1 advised that they both agreed and went up to a photo studio located above the hair salon.

8. While upstairs, W1 advised that the photo studio had numerous book shelves that contained vinyl records and photo albums. She indicated that there were also a couple of chairs, a couch, and a desk. W1 advised that there was a throw rug on the floor and upon their arrival, Kincaid placed a sheet over the rug and asked them to disrobe. After they disrobed, W1 advised that they proceeded to have sex while Kincaid watched. During the sexual encounter, W1 stated that Kincaid approached W2 and fondled his penis during intercourse. Cooperating W1 indicated that Kincaid later commented that he was bisexual, but preferred men to women. W1 further commented that Kincaid had also stated that he is impotent and had to have sex vicariously through other people.

9. W1 stated that after they concluded having sex, they got dressed and proceeded to have a conversation with Kincaid. During this discussion, W1 indicated that Kincaid mentioned that he has "a network of friends" that were also very interested in photographing people having sex with each other, and if they were interested, they could make a lot of money performing for them. Further into the conversation, W1 indicated that Kincaid stated that he had numerous photo albums full of pictures of "kids" that he had take over the years. Kincaid did not describe what the photos were of, but only mentioned that they were of kids.

10. On or about 08/03/06, W1 advised that she, along with cooperating W2 went back to Kincaid's residence and had sex again for money. W1 indicated that upon completion, Kincaid gave W2 eighty ($80.00) dollars and gave her fifty dollars ($50.00). When she asked why she was only receiving fifty ($50.00) dollars, Kincaid responded by stating that he was not their piggy bank and if they wanted a higher return, they would have to work

for it. When asked what he wanted them to do, Kincaid commented that he had been interested in taking photos of two young men that will be referred to in this case as cooperating witness #3 (W3) (age 18) and cooperating witness #4 (W4) (age 15). Kincaid commented that if she could introduce them, he would pay her a substantial amount of money.

11. On or about 08/09/06, Wilkinson interviewed W3 (W/M, age 18) in relation to this investigation. W3 advised that he did not know Kincaid and did not know why Kincaid would have targeted him. Wilkinson asked W3 if he would provide police with a photo of himself to further the investigation. W3 advised that he would and returned later that day with a senior class photo.

12. On or about 08/13/06, Wilkinson advised that W1 called and stated that she had just left Kincaid's house and that he was extremely excited by the picture of W3 and the potential opportunity to take photos of him. W1 commented that Mr. Kincaid admitted to "watching" W3 ever since his father would frequent his hair salon.

13. W1 stated that Mr. Kincaid also mentioned that there are numerous other boys that frequent his house on a regular basis. When questioned why he like to have boys come over, Mr. Kincaid stated that he likes to take pictures of the boy's genital areas when they are wet and getting out of the pool.

14. On or about 08/14/06, Chief Wilkinson made contact with W4 concerning the above investigation. When questioned how old he was, W4 advised that he was fifteen (15) years old. When Wilkinson explained that there was a man in town that wanted to take pictures of him, W4 asked if "he was talking about the older guy that lives on Union that cuts people's hair?" Wilkinson commented that when he asked W4 why he would identify that particular individual, W4 indicated that when he was in the sixth (6th) grade, he met the older guy while he was out riding their bikes. W4 indicated that the guy offered to allow him to swim in his pool which he indicated that he sometimes would with his friends.

15. When questioned further, W4 advised that they did not always have their swimming trunks with them and the "older guy" would comment that "we are all guys here, so it is alright if you swim in nothing." W4 advised that he often found it "weird" that the older guy would always have his

camera with him while they were swimming and playing in the yard. W4 indicated that nothing sexual ever happened and commented that they stopped going there after they heard that he was gay.

16. On or 08/17/06, Chief Wilkinson advised that he introduced W1 and W3 and explained that he wanted them to meet with Kincaid in the hopes that he would openly discuss with W3 what types of photos / acts he wanted them to do. W3 was also instructed to attempt to Kincaid to show him some of his "finished work" and others photos that Kincaid has taken in the past.

17. During surveillance conducted at 503 East Union Street, Litchfield, IL, on August 17, 2006, Sgt. Chris Robinson, Litchfield, IL PD, (Robinson) observed W1 and W3 enter the residence. Shortly afterwards, a young boy (W5) showed up and entered the barber shop. A short time later, W1 exited the residence with W5 and disappeared down the driveway and out of surveillance range. After approximately fifteen minutes (15), W1 re-entered the house.

18. At approximately 9:00PM, W1 and W3 reported back to Litchfield, IL PD. Cooperating W3, in a written statement, stated that Kincaid admitted to taking many pictures of people, including some of which were under the age of eighteen (18) posing nude and performing sexual acts. W3 indicated that Kincaid commented that he has taken many photos of kids his age and commented that the photos were well hidden inside the house in case the police entered. Kincaid went on to say that he enjoyed taking pictures of young boys and then documenting their maturity over the course of time. Kincaid admitted that one of these boys was W5.

19. On 08/18/06, Wilkinson advised that he met with W5 and his mother at the Litchfield Police Department. W5 is a white male, age 13. W5 indicated that he met Kincaid about one and a half (1 ½) years ago. W5 stated that Kincaid would allow him to swim in his pool and over the course of time, he befriended Kincaid. About a year ago, Kincaid commented that he would start giving him money if he would do some "things for him." After a few weeks of Kincaid not telling him what he wanted him to do, he brought W5 to a room above the barber shop and told him that if he would take off his clothes and let him take photos of him, he would pay him some money. W5 indicated that he was apprehensive about it, so Kincaid started to increase the money he would receive from the initial amount of thirty

($30.00) dollars to the final offer of sixty ($60.00) dollars. W5 indicated that he finally agreed to allow Kincaid to take the pictures.

20. W5 indicated that the first time he can recall being photographed was around Christmas of 2005. W5 indicated that he can recall that it was cold out and that it was snowing when he arrived at Kincaid's house. W5 indicated that upon arrival at his house, Kincaid took him upstairs to a room above the barber shop and set up a table and placed a pillow and sheet on it, then told him to take off his clothes off and lay down. W5 indicated that Kincaid had taken 2-4 pictures with a Polaroid camera and photographed the front, side and back of him. W5 commented that Kincaid had told him that he wanted to take pictures of him each month chronicling the differences in his body as he matured. W5 indicated that the last time that they took pictures, Kincaid stuck his finger in his (W5's) anus and that Kincaid "sucked his dick." When questioned if Kincaid still takes photos of him, W5 responded "that nothing has happened for a while," but that Kincaid now pays him to "keep his mouth shut".

21. When asked how much money he had ever received from Kincaid, W5 replied sixty ($60.00) dollars. When asked how much money he thought he had made, W5 indicated that he thought he made approximately twenty ($20.00) dollars a week for about the last year or so. When he was asked how much money total he thought he received, W5 indicated that he thought approximately two hundred ($200.00) dollars.

22. After further questioning, W5 indicated that the next day (08/19/06) he was supposed to meet Kincaid at his house. When questioned why they were suppose to meet, W5 indicated that Kincaid wanted to introduce him to a lady that Kincaid wanted him to have "sex" with while he watched. W5 also indicated that Kincaid stated that the lady works for Playboy or something and that he could make a lot of money for pictures.

23. On 09/02/06, at approximately 7:30pm, agents of the Secret Service and Officer's from the Litchfield, IL Police Department recorded a consensual telephone call between W1 and Kincaid. During the conversation, W1 commented that W5 had told her about the fifty (50) year old woman that Kincaid wanted him to take photos with. W1 commented that she was in need of money and asked Kincaid if he would be willing to take pictures of her and W5 so they could both make some money. Kincaid stated that he would be excited to and told W1 that W5 was young, but he

thought that he could be "trusted". Kincaid and W1 set the time of 6:00PM on 09/04/06 for her and W5 to arrive at his residence for photos.

24. On 09/04/06, at approximately 6:00pm, W1, wearing a consensually monitored body wire, responded to Kincaid's residence located at 502 East Union, Litchfield, IL.

25. During the ensuing conversation, Kincaid indicated that he thought W5 was a "cute little shit" and when asked, admitted that W5 had told him that he was fourteen. When W1 commented that W5 had told her that he (Kincaid) had taken naked photos of him, Kincaid admitted that he had. Kincaid stated that Collins became suspicious and burnt them after becoming upset, but Kincaid indicated that he had others "stashed away" and well hidden in the house. Kincaid later commented that he was upset with Collins for getting rid of the pictures stating that you can never "get those photos back". Kincaid went on to state that he had a few naked photos of W5 that were "absolutely the best pictures that he ever had".

26. After further discussing W5, Kincaid went on and asked W1 if she had ever seen W5 naked. W5 commented "no" and Kincaid proceeded to state that he was going to be one "hung kid" and that W5 has "one of the most beautifully shaped dick and balls" he has ever seen.

27. W1 then asked Kincaid if she was willing to bring W5 to his house, what would he want them to do. Kincaid indicated that he would like them to have sex similar to what she did with W2. Kincaid went on further to state that one of the shots that he wanted was W1 showing her "tits" and W5 completely naked "touching his dick", further commenting that would be a really "cool shot".

28. After explaining what he would want them to do, W1 commented that she had a fourteen (14) year old cousin that she thought he would like. Kincaid commented that if she could "set it up", he would be interested. When W1 stated that she was unsure if Kincaid had a problem with her cousin only being fourteen (14) or fifteen (15), Kincaid advised that although the law does not see it that way, he is interested only if they can "cum". Kincaid stated that if they "are able to make a baby, then he thinks that they are not a baby" and that as long as they keep their mouth shut, it doesn't bother him. Later in the conversation, Kincaid commented that he

doesn't think anything is wrong as long as they were "old enough" to give consent.

29. On September 6, 2006, a search warrant was executed on 502 E. Union, Litchfield, IL. Upon execution of the warrant, Kincaid and Collins were questioned following the administration of Miranda rights.

30. During his questioning, Kincaid acknowledged the following:

    a. Kincaid acknowledged a period of sexual abuse involving minor children starting on or about 1966 and continuing to on or about 2006. He further acknowledged having sex with at least 16 different minor children to include oral sex and anal digital penetration in at least two different states.

    b. A search of Kincaid's home revealed, among other things, five to ten photo albums documenting the above referenced sexual abuse. Those photo albums contained images of child pornography, school pictures of some of his victims and other personal information relating to the victims.

    c. Kincaid acknowledged collecting, and a search of his house revealed, hundreds of images depicting minors engaged in sexual activity, with each other and as individuals. Many of those images were created by the defendant using a Polaroid camera. An examination of that camera reveals the inscription "ASSEMBLED IN CHINA" stamped on the rear of the camera.

    d. Kincaid acknowledged creating hundreds of images of child pornography. Specifically Kincaid acknowledged that on or about September 2004 he used a minor female, age 15, to engage in sexually explicit conduct, specifically oral sex and sexual intercourse, for the purpose of taking pictures of that sexually explicit conduct. Defendant further acknowledged that he created pictures of that conduct using a Polaroid camera. An examination of that camera reveals the inscription "ASSEMBLED IN CHINA" stamped on the rear of the camera. Defendant retained the aforesaid pictures and they were recovered during the search. Defendant created approximately 10 such pictures.

s/ Scott Anderson

---
Scott Anderson
Special Agent, USSS

Subscribed and sworn to before me this 7 of Sept 2006

s/ Byron G. Cudmore

---
Byron G. Cudmore
United States Magistrate Judge